Our next case is in re. Search Warrants. Mr. Abrams, glad to hear from you. Thank you, Your Honor. You're going to tell us about our jurisdiction. Yes, Your Honor. May it please the Court, I'm Elliot Abrams and I represent the appellant, John Doe. This Court does have jurisdiction to address the question of whether deciding that a document is facially non-privileged is a privileged determination and accordingly whether the District Court erred in denying our motion for an injunction. Tell us specifically why the Supreme Court's decision in DiBella does not apply here. Yes, Your Honor. DiBella does not apply as the 11th Circuit recently held in court because the issue here is that we requested a protocol to decide a privileged issue. These privileged issues are not unique to Search Warrant cases. They're not unique to criminal cases. What we've asked for is antecedent to all of that. It's just we need a protocol that adequately protects the privilege. But the object of the Search Warrants, I take it, is the object of whatever criminal investigation is underway? I take that's what the government's plan is here, but however the material ends up in the government's possession is irrelevant to the question of what protocol is required to safeguard the privacy interest and the privilege. So is your argument that DiBella doesn't apply or that the two elements of DiBella, you win on those elements? I want to make sure I understand what you're saying. I think we actually have both arguments here, but going with the DiBella test is met. The DiBella test is met as the 11th Circuit found. The 11th Circuit is the only circuit to consider this question as it applies. That's not correct. I don't think there's a D.C. Circuit opinion that reaches the exact opposite result or very different result in terms of the property. Is it solely for the return of the property? I'm not trying to play gotcha. Maybe you don't have that. Are you familiar with that one? Yes, Your Honor, and I've read that one closely and looked at now Justice Kavanaugh's concurrence where he says that the privilege issue was resolved and was moved. So the only question in the D.C. Circuit case was what protocol is necessary to make sure that the search doesn't exceed the scope of the warrant. That's all a Fourth Amendment issue that was resolved by the D.C. Circuit. That protocol is not what we're asking for here. So what they said in the D.C. Circuit case was, you have a problem with how we've resolved the question of whether they can look at certain documents under the search warrant. But Justice Kavanaugh says, here, however, the attorney-client privilege issue has become moved during the pendency of the appeal. Therefore, the court properly does not address the merits of petitioner's attorney-client privilege arguments. And so I think every case, and it's very helpful, we appreciate the court raising this issue and providing those citations. We've looked at those closely. Let's go back to Dabella and go through the elements first as opposed to whether or not it applies without the elements. Your motion here is not for the return of property. Start with the idea that you have not yet, in the first, you know, eight minutes of your argument or so, however long you've been going, in describing it, I wrote down four different versions. At no point did you say, this is about returning property. And it is about returning property. It's about returning... Where do we find that in your motion? You find it in the ultimate request is for the government to disgorge any of the material that it has no right to have. And so how do we decide that question? What do they have a right to have? Your conclusion asks for an injunction and then to enter an order establishing a filter protocol. I'm not sure I found where it says, give me my stuff back. I mean, this is the challenge, right? So you're in a situation where what you're asking for is directions on how the government is to execute its warrant. The manner of doing so. And as a general matter, the Supreme Court's told us, like, you don't get to do that. But that's to the merits. The question we've got is, who gets to decide, if anybody, that question? And what I'm having a hard time figuring out is why this is solely for the return of property. And I think the opening to your argument is like pretty instructive. That at no point in the first several minutes that you're describing what is at issue, the question here is deciding. The question is about, we have to decide what the protocol is. All of these are the means of doing certain actions, right? None of those are to return the property, right? And de Bella tells us, if it's solely about the return of property, that's fine, right? But even if it might even subsidiary include the return of property, but if it's also about something else, then de Bella's not satisfied. And you spent the first several minutes of your argument talking about everything but returning property. So why isn't that like the most indicative determination for us? The most indicative fact that you're not really asking solely for the return of property, but instead a direction on how the government is to perform their duties. We are asking for return of property. We are asking for the return of the property that is privileged. That's the ultimate request. I'm going to ask you again, where in your motion do you do that? The implication of saying we're asserting privilege is to say no one has a right to view this. And in the Ninth Circuit case, Anderson, it says we're going to look at the ultimate purpose, not what the labels are on the motion. Here, we've asked for an injunction, and that injunction was denied. But when Corf addressed this exact issue, they said the interveners clearly seek only return of their property. They sought to prohibit the government from reviewing seized materials until a protocol... So explain that to me. And you have great respect for our friends on the Eleventh Circuit. But those two sentences seem like really odd, right? They only seek the return of property. They seek to prohibit the government from. Those two sentences, you would expect the transition between those sentences to be but or however or to the contrary, right? It's not that the second sentence flows from the first sentence. In fact, they're like totally contradictory. I understand that our friends on the Eleventh Circuit thought them to be the same thing. But they're actually like sentences are the opposite. Like I don't know, I can't even understand those two. I mean, you might be able to get there, but you can't say that the first sentence and the second sentence are the same. They're actually contrary to each other, no? They're not contrary to each other because what you're saying when you say this material is privileged is you're saying give it back. It's not yours. It's mine. Anytime I go, you know, someone steals my wallet and I say to a police officer, he stole my wallet. What I'm saying is I want it back. And so when you say this material is privileged, stop. I understand that as a general premise, but I'm particularly troubled by the absence of that discussion in your motion. You haven't asked the court to give me what I consider to be my property back. And if you did, and this is, I'm going to lead to whether Dabella applies, because if you did say I want it back because it's privileged, you're, you know, there's two ways or different ways you could, reasons you could want it back. You, I think, are saying that, you know, because it's privileged, they're not entitled to it. I hear you on that. But you're not saying I need it back because I got to go on with my life during the course of this investigation. And, you know, the D.C. Circuit, while it might be talking about non-privileged stuff, perhaps, maybe that's been mooted, talks about when you, even if you are saying you want it back, if it's really to gain an advantage or take, you know, take advantage of the rights in litigation, that's a different animal than I need it back to go on with my life while this investigation happens. So I'm not sure even if you want it back, it's solely for the return of the property, because I get it. You want it to utilize the, you know, the rights that the privileges, you know, give people in litigation. And that's, isn't that part of what you would be doing, even if you were seeking to get it back? Well, what we are doing is asserting our right, which we think is a constitutional right, to have the appropriate branch of government decide what's privileged. And then once the court finds what's privileged, obviously, it comes back to us. That's the natural next step in the process, is the disgorgement of the government of what they have no right to have. But the bill is really important, Your Honors. Not necessarily, though, right? It could just be, you know, placed under seal. It could be destroyed. Right. I mean, that's the point, right? But that's the point. It could be destroyed. It could be placed under seal. The court could keep it, right? Like, all sorts of things could happen to it, right? But it's not about returning it to you, right? If this was a car, right, if the government had seized a car and you thought you were entitled to it for some reason, but you needed the car to get to work, right? All right. That's a return of property. If it's a server, you need it to run your business. I need the server back. You can keep a copy of it. I don't care, but I just need to be able to pay my employees on Friday. Like, that's a return of property, right? Not where you're saying, I don't really care if I get it back, but I don't want you to have it, right? That's where it's not solely a return of property. That's the rub that I'm having. And I understand that. I think what we have here is, DiBella was about suppression. It was not about any of these privilege issues. Rule 41, we cited it because the 11th Circuit said that's the way you do it. But what we actually did is we moved for an injunction. And Congress has said in 1292A1, if you get a denial of an injunction, you can appeal. You're shifting now, and that may be fine. Is that an argument that DiBella doesn't apply? I mean, you've argued maybe sufficiently, maybe not, that you meet the DiBella test. Are you now saying DiBella doesn't apply because you're really not seeking primarily the return of the property? You're seeking a discovery-type order via an injunction, and that's the way you have jurisdiction? Yes, we think both are true. We think the DiBella test has to be read in light of what it was about. And in DiBella, they recognize the right to immediately appeal injunctions. But we've said in Parrish v. United States that DiBella applies to a 1292 appeal. Certainly. That may be right, it may be wrong. We could have an interesting discussion, just like we could about the Ferris Doctrine. But we've held that the Ferris Doctrine applies to an appeal of an injunction under 1292, just like it does under 1291. Yes, and so in light of that, I think the first prong of DiBella needs to be read in its context, which is saying when you are moving for suppression, when you're challenging the validity of the search warrant, you're necessarily seeking a remedy that you can get later. But what we have here is a constitutional right to have a decision made. That right is going to be lost. And what's going to happen if the court says that the government can make these decisions on its own, is that it's going to chill the attorney-client privilege and the work product protections. And so DiBella was written in light of 1292A1 and the recognition that if you're doing something separate and apart from challenging the search warrant, then you are allowed to move forward. If what you're doing is not connected to the essence of the prosecution, but is instead something you would do irrespective of a prosecution, that's really the substance of the question. And then they looked at Rule 41, which just gave you two options, return of seized property or suppression, and said, well, it has to be option one. They didn't anticipate these privilege issues. But that doesn't mean that when you're saying something's privileged, you have no right to it. I want the appropriate branch of government to determine which stuff I'm entitled to have back. That is all part, it's not part of suppression. And in that dichotomy, it's far closer. And I think it's in the bucket of return the property. Can I ask an unrelated factual question? I think you're not limited by 6E, and so I want to ask you, are you aware of an ongoing grand jury proceeding as it relates to this case? Not at this moment in time. The petitioner was served grand jury subpoenas back years ago when the search warrant happened the same day. But I don't know whether that's still going on or not. So when they were served, so this is what I want to talk about on the second prong of Dubella, right? Whether there was an ongoing proceeding. And we've said that an ongoing grand jury proceeding is a criminal proceeding in essay. And so given that he was served with grand jury subpoenas, doesn't that mean you failed the second prong of Dubella? No, the second prong is whether what you're doing is necessarily tied to that. And that's why all these suppression cases fail. Because what you're really doing is saying, don't introduce it at my trial. We're not saying that. So you admit that there is, at least, because it's not really about today, right? The question is at the time. That at the time, there was an ongoing grand jury proceeding. But what you're saying is that your request is not related to that grand jury proceeding? Yes. Why is that? Because what we're asserting is a privacy interest that's separate and apart from an evidentiary interest in the, you know, whatever the government's going to do with it. That's the whole purpose of the attorney-client privilege, Your Honor, is to make sure that So how does that square with the discussion the Supreme Court has in Mohawk? It's pertinent. Where they talk about that it's a remedy down the road, right? So you can fix it. It doesn't require an immediate appeal. I get the facts that they're a little different. But the court suggests there that this privacy interest that must be vindicated right now, right, is not a privacy interest that must be vindicated right now, right? It has to be vindicated down the road where there's a proceeding. And Mohawk is very helpful for us because it says you can deal with this later. First, because a judge has already decided that it's privileged and that's very unlikely to have been wrong. And so here we don't have that. And then second, because you can seek immediate appeal by being held in contempt. So those two protections, they say, are what sufficiently, you've already got, you have these other so that it's not going to chill the exercise of the privilege. This case is entirely different. So why can't you seek mandamus, the equivalent of the contempt? Might not work, right? I get that, right? But there is a similar mechanism here where you could, in theory, instead of appealing, right, which is one, you could seek mandamus. We can seek mandamus, but there's two primary protections in Mohawk that don't exist here. One is unilateral right to appeal by being held in contempt. And the other is a judge has already made the privilege determination that's unlikely to have been wrong. Neither of those two protections exist. And so fundamentally, the question is, will this procedure, if widely used, undermine the attorney-client privilege and the work product protection? And it will because the government has said what they're looking for is just lawyer documents. The district court made a judgment that that's not true, right? It wasn't an individual privilege determination as in Mohawk, but it was a protocol decision. And we assume, as a general matter, that district courts do a good job, right? This is the same question. It was just a broader decision here than it was in Mohawk. Mohawk was an individual document privilege decision. This is a process privilege decision. But I don't see why that makes any difference. And the contempt seems to be equivalent to mandamus. So it strikes me that we have actually the exact same scenario that Mohawk exists. Mohawk is very different on the question of, is the document privileged? Because the government is going to decide. And just as in Baltimore law... What we're asking is, the district court in both Mohawk and our case, the district court has made a decision, right? And the question is, do you get to appeal that decision? And Mohawk says, this is a district court who's made the decision. So we generally trust district courts. We have a district court who made a decision about how to handle privilege in this case. And the question is, do you get a second bite at the apple or not? That's the same as Mohawk. I respectfully disagree that it's the same because in Mohawk they're making a factual determination. Whereas here we have a legal determination that there is not a privilege decision being made. And what that does... You think a privileged decision is a factual determination? I mean, it's always a mixed question, right? I mean, in every scenario, because the whole point of whether it's a privilege is you take the facts and you apply it to the law, right? The same thing the district court's doing here. Here the district court is saying, it's not a privileged decision to decide that a document is not privileged. And we think that that is a legal error. It has nothing to do with the facts. It's just a legal error that the district court made that undermined all of its decisions as it relates to whether an injunction... Thank you. All right. Thank you very much. You've got some rebuttal time, Mr. Gibbons. May it please the court. John Gibbons for the United States. In light of the court's order last week regarding appellate jurisdiction, the United States went back and re-evaluated its position. And we believe that based on the Supreme Court's opinion in DiBella and Parrish, this court does not have appellate jurisdiction to address John Doe's challenge at this time. And therefore, the court should dismiss this interlocutory appeal in its entirety. We are happy to submit a supplemental brief if it would be helpful. But I think that... Why don't you walk us through... Yeah, the principles are straightforward. ...your steps of why you think opposing counsel is incorrect. Yeah. So DiBella made clear that for the most part, a Rule 41G motion does not give rise to appellate jurisdiction when it's denied. Unless in certain narrow circumstances where, one, the motion is solely for the return of property, and two, the motion is in no way tied to a criminal prosecution against the move-in. John Doe's Rule 41G motion is not solely for the return of property. It's not even primarily for the return of property. He has no problem with the filter team reviewing his documents. What he wants to do is institute another layer of review between the filter team and the prosecution team. Can you start with the distinction that DiBella is not a 41G motion? So it's an E motion, which is the predecessor that combined both returns and suppression. And so why don't we read DiBella when it says solely for return of property? To mean the part of 41E that is now 41G. And so as long as you, as a formal matter, file this as a G motion, that that part of DiBella is satisfied. Yeah, since DiBella came out, there was an amendment to the rules. But courts post-amendment have said that that amendment does not affect the DiBella analysis. Have we said that? No, I believe that would be the DC circuit. So help me understand why that doesn't, why those cases are right, right? Because you might think as a formal matter, if you filed, and maybe this isn't because it's an injunction, but I want to bracket that for a minute. But if one technically filed a 41G motion that you could say under DiBella, this is not a motion to suppress as a formal matter because we didn't file it under that rule. We instead filed it under 41G. And 41G, by definition, is formally limited to motions for return of property. Right, and so what you have here is a framing issue. So what, where the defendant filed, or the target, excuse me, files a motion under 41G formally seeking return of property. But what he's really seeking, his actual objective, is to affect the evidence available to the prosecutors at a future potential hearing or trial. That falls under DiBella still, even though formally the rules have separated the suppression and the return of property inquiries, simply because he's not seeking a return of property. He's using Rule 41G as a mechanism to affect suppression down the road. Is there anything, I think your colleague referred to this perhaps, is there anything, it seems like, certainly this is a case of Mohawk, and it feels like it's maybe implicit in DiBella, is this notion that we're not going to let you do this now because there will be an opportunity to do it down the road and we don't want piecemeal appeals. Do you agree that that's kind of a fundamental tenet of this, of the decision? Absolutely. So what then, how do you deal, does, if you have a situation where there is no, there is no ability to appeal a decision later, would DiBella still apply? I mean, if conduct by the government related to this invaded a privilege for which practically there's no appeal later, would DiBella and Mohawk apply? Well, I think it still would. I'm trying to imagine a situation where there wouldn't be. Your protocol says, doesn't appear to have any way of detecting work product documents unless the attorney's name is involved with them. So, I mean, the thing is, you want attorney's names, but work product may have no attorney's name attached to it. Those immediately go to the prosecution team. And they may not be listed as evidence to be used at trial. And so there's not, okay, some indication down the road that you'd object to a particular document. The government, and I'm not saying you would do this as individuals. I hope you're not, this isn't an accusation. But someone might see that, use it to their advantage, and we have no indication that they did it. And there's really no appeal other than we're generally challenging this process. And maybe that's enough. But it seems like there could be misconduct that would effectively be unappealable there. Well, let me answer, there's kind of two parts to your question. The first part is about the search terms, and then the second part is about the unreviewability. The search terms haven't been set yet, obviously, because we haven't gotten any input from the defendant or a final ruling from this court. And the search terms can absolutely be keyed to detect work product as much as possibly they can, for example, by including work product. And if someone's careful and they write work product prepared in anticipation of litigation, you're good there. But lots of times there's work product that doesn't have those formalities. Good lawyers advise their clients to do that, but that doesn't always happen. And if you're talking about the actual substance of it, you can't really do that. How would you do it if you didn't have an attorney's name or those official taglines for work product? Sure, sure. I take your concern, but you can track it down later and you can resolve this on appeal. Because everything that the prosecution team receives will be turned over to the defendant in discovery. And if he sees work product in the discovery, then he can say, hey, wait a second, the filter team didn't work. And they can hold a suppression hearing at that point. And courts do this all the time, for example, in the Castigar type situation or just a normal suppression hearing. You take evidence about where the document came from, who saw it, what decisions were made based on it. So I hear you. So you're saying that in the stuff that goes in the non-attorney bucket, if that's turned over in discovery, at that point, the defendant can say, hey, there's a problem there and raise it there. Of course. But there could be, whether could's enough is a whole different question here. But there could be actions taken in response to reading work product that would not be necessarily able to be the subject of a motion. I mean, let's say here my employee, Johnny, we didn't do anything wrong, but Johnny will crumble if he's ever interviewed. And maybe Johnny gets interviewed and he crumbles, even though they don't do anything wrong, allegedly. I mean, maybe you get to suppress that because the document's there. Maybe you can tie that stuff and maybe that's not the best example. But there's some stuff here. I mean, it seems like this protocol is geared towards attorney-client mostly. And I'm not trying to get in the weeds because we're dealing with jurisdiction. My point is back to the premise that I mentioned, is that there seems to be this idea that there's at least a remedy down the road. And I just wonder whether that's necessarily true. But is that a kind of a condition or assumption in Mohawk and Davila? I think it's fair to say it's an assumption in Mohawk and Davila. And I think the district court down the road, if the target is indicted, absolutely would have remedies to fix any issues that might arise. For example, the evidence itself could be excluded. Any fruits from that evidence could be excluded. Specific prosecutors could be ordered to be sequestered and not prosecute the case anymore. In the most extreme circumstances, if the government really messes up, the court absolutely has the power to dismiss the indictment entirely. This is the castigar sort of issues that come up in lots of other contexts. Exactly, yeah. So all of those remedies are available. Of course. And this is, you know, it kind of bleeds over into the merits. This is why this whole privilege determination, who makes it, this is why this is all premature. None of it's happened yet. The government is in the early stages of an investigation. The government went to a judicial officer and presented evidence that these materials contain evidence of criminal activity. That there's probable cause to believe that. I don't want to get too sideways on the merits here. And I want you to come back to Dubella to finish the discussion. In particular, given the grand jury subpoenas were served, why the second prong of Dubella is not implicated here. But I'm a little, I'm confused as to why the government sought sort of these ex ante restrictions. Right. I mean, when we look at the Supreme Court's precedents and Logee and Grubbs and Dahlia and otherwise, there seems to be a suggestion for the Supreme Court that seeking these ex ante determinations by magistrate judges about how to operate searches is not only not required, but is in fact like maybe prohibited under the Fourth Amendment. By ex ante, you're talking about the part of the search warrant, the attachment B that has. Both the search warrant before, you know, when you're getting the search warrant signed, that seems like the cleanest example. But but also, you know, now the sort of iteration that then led to where we are. But that ex ante kind of limitation, you know, is what creates this sort of potential separation of powers problem. Right. Like if the district court or the magistrate judge didn't have a dispute before it, there wouldn't be a separation of powers concern. Right. The separation of powers concern only arises when there's a dispute. You, the government have created the dispute by taking it as an ex ante matter before. And it doesn't seem like you're certainly not required. It seems like to me on the Supreme Court and I read the Supreme Court cases as saying it's actually impermissible for a magistrate judge to to dictate how the government executes a given search warrant. Be it a no knock or otherwise. Right. Installing a bug, whatever we want to sort of talk about. Yeah, yeah. No, that's absolutely true. So let me give some background on the search warrant here. You know, as as a practical matter, it's almost impossible to anticipate beforehand whether when you seize a computer or a drive, whether there will be privileged materials on there. People consult lawyers for a lot of it is impossible to anticipate. Why are you asking the magistrate judge for permission to do it in a certain way? That's the very point. Magistrate judge can't make a reasoned decision without knowing the facts. You can't make a reasoned decision without knowing the facts. This is why we don't require ex ante restrictions. Right. We don't say you got to decide whether it's a no knock or not before you get there under the Fourth Amendment, at least. Right. And so the government's inclusion of that protocol is protective of the privilege. We're saying in the event that we search these materials, we have probable cause to search these materials, a warrant is issued. If while we're going through them, we find privileged materials, this is what we're going to do. And the judicial officer has said, OK, that's what you're going to do. And so that protects the target's privilege, that protects the government. And is it is it your view that the magistrate judge has the authority to do that and that that somehow binds you? Because the Supreme Court seems to say the magistrate judge lacks the authority to do that, to approve it. That that's an improper action by the magistrate judge and that whatever the magistrate judge doesn't matter anyway because it doesn't bind you on the back end. That's rental. I I'm not sure I would say that they don't have authority. I think those kinds of limitations about what you can and why, because you don't think Dahlia and Grubbs stand for that idea. No, I just haven't looked into this issue in that particular light. But I think these restrictions are important to make the warrant reasonable to say that when we go in, we're going to seize these relevant documents and we're going to make sure that we don't seize the privileged documents. I'd just say, like, maybe maybe read Dahlia and Grubbs and Reynolds. Going back to DiBella. Sorry, Your Honor. I have to finish your answer. No, no, he's transitioning. So I'm not talking about that, but I want to I want to go to a few other jurisdictional points and one not. If if here the district court had said our 2019 case, 2019 opinion makes filter teams prohibited. You can't do it. Could the government have appealed that? No. Does the in that 2019 search warrant case? You mean no or ever or no as an interlocutory appeal? As an interlocutory appeal, because it's not a it's not an order suppressing evidence. It's just a filter protocol. So in in that 2019 case, the Fourth Circuit said the law firm noted this appeal pursuant to 28 U.S.C. 1292 A1. Then it says that jurisdictional provision authorizes appellate review of a district court decision denying injunctive relief. Now, I recognize that doesn't go deeply into the issues we've been talking about for a while. Yeah. But is that not a in that case, there was a motion under 41 and Rule 65, which is what we have here. Is that a problem for us? Is that our law that we are stuck with? Well, the the jurisdictional point wasn't at issue. It wasn't contested in Baltimore law firm. And if if the court were to view that as a holding, it would conflict with the earlier decided case in Parrish. And so the earlier case would control Baltimore law firm. The law firm was not a target, was a lawyer in the firm. That's true. That would be another lawyer was not asking for return of documents. Privilege. It was the law firm, in effect, a third party. Essentially, a third party intervenor, I guess. That's correct. And in that case, they were asking for the return of property. So if if they had gone through the analysis, they could have gotten to the right place analytically. But the sentence about 1292 A1 is is just inconsistent with Parrish. So I hear you on that. So and I'll try to stop because I've been taking a lot of time with you. But in that 2019 case there and I'm kind of moving maybe in case we find there is jurisdiction. Sure. But if if they are in the 2019 case, there are statements that if if the if the filter team reviews privileged documents, that equals irreparable harm. And I understand the factual differences, the case and the argument that just because of that being a law firm that doesn't governor's here. But from a is there any reason that the filter team's review of a third party's privilege document would be any more irreparable than review of a target's privileged documents? Absolutely, because the target has the opportunity to challenge those directly as to the prosecution at hand down the road. But OK, so I mean, this is the problem in doctrine. This is the justification for the problem. OK, so the but if the. But the way the our court decided it there was it can't be undone so that subsequent rights it ruled for targets. Is your point that there's no subsequent right for the target for the for the third party? Yes. And like you said, you you mentioned the distinct circumstances. It couldn't be undone that the real irreparable harm there was the filter team was from the same district and the filter team had investigations going, possibly for the other clients. And they asserted that they could use those privileged documents as evidence against the other clients under the plain view doctrine. For sure. There definitely was parts of that that are not what we have here. I'm just that. But when you talk about the concept of a filter team reviewing privileged documents being irreparable when it happens because it can't be undone. It's not undone really in the sense that it could be undone by a later judicial decision. It's that it's reviewed. And we said that was that was irreparable. And it just strikes me that if that's true, I can't understand why that's any different for a for a target than a third party. Well, I I think that's the only answer I have for you on that is that you'd have to limit it to the circumstances present in that case. Can I just ask you about the second prong of Dabella, given that grand jury subpoenas were served at the at and around the same time as the search warrant under Dabella? Wouldn't we say that we've said that a grand jury, I think we've said that a grand jury proceeding is a criminal proceeding and essay. Yes. And so lots of circuits have said that as well. Right. So is that. Can you just talk just for a minute about that? I know we're over time, but do you agree that there was a grand jury proceeding at the time? And second, does that mean the second prong of Dabella is not satisfied? I'm not sure I can discuss whether or not there was a grand jury proceeding at the time, but. You don't dispute what your colleague said today, which was grand jury subpoenas were served. Taking taking what he said is true. That's the public piece. Right. I understand you can't talk about what's non-public, but the fact that subpoenas were served is public. Right. Taking what he said is true. Absolutely. That would fail. Dabella's second test that it's a high bar in no way tied to a criminal prosecution in existence against the movement. And in no way tied is, you know, it's very stringent. And the ultimate goal of this is to affect the quantum of evidence available to prosecutors down the road. That's not in no way tied. That's very much tied. And would that be different if this was the instead of change things around a little bit and make this the Baltimore law firm case? If the law firm was making this motion, we might really make the argument that it is in no way tied to the criminal prosecution, because the law firm and its unrelated clients actually had nothing to do with the at least plausible prosecution of lawyer A or whatever they described. Hopefully this is the last question. Would the law firm or was the law firm's ability to appeal in the Baltimore law firm case because it would not have had another opportunity? It's not the criminal defendant at a later point in the case. I'm asking. I don't know why the court didn't say that. They didn't go into this because it wasn't contested. I think that would be the right way to think about it. That they could have appealed? Right, right. That they could have or could not have. The law firm? Right. Not the target. Not the target. The law firm. Yes, I believe so. The law firm. Because in that case they were asking for their privileged documents back. Arguably you would fight about whether it was tied to the investigation. But in theory, I think that would be a route for the law firm to go. Thank you very much. Mr. Abrams, you've got some rebuttal time. Thank you. In Mohawk, the court addressed a jurisdictional question related much more closely to what we have here than what the ballot looked at. And there they said the crucial question is not whether the attorney-client privilege is an important interest in the abstract. It's whether deferring review until final judgment so imperils that interest to justify the cost of allowing immediate appeal. And then they went and looked at whether the additional requirement of allowing an immediate appeal is necessary to prevent that chilling. And so really that's the closest Supreme Court framework to what we have here is you say, if we say that this is okay, what is being done in this case, are people, lawyers and clients, going to stop relying on the attorney-client privilege? And the answer to that in this case is yes. If you are a lawyer representing a client who's under criminal investigation and you know that if there's a search warrant that seizes your client's computer, the only check on whether prosecutors will get access to the information that your client has prepared at your direction, is that law enforcement officers unilaterally decide that that material is not privileged, you're not going to have your clients make timelines. You're not going to have your clients write up their narrative about what happened. You're not going to have your clients prepare work product on their computer because there is no check other than a law enforcement group of people who this court has recognized pose a serious risk to privilege holders. And so with that, yes, Your Honor. Can I interrupt you before we finish that? I appreciate that point. Judge Richardson asked you if mandamus was comparable to not answering in a civil contempt situation. I think civil contempt is automatically appealable, isn't it? Yes, Your Honor. Whereas mandamus has three substantive requirements that must be met. Do you agree with that? Yes, Your Honor. And so there's some similarities, and I think that is one of the things Mohawk talks about. Rid of mandamus, go through several other options. And maybe those are problems for you, but I'm not sure it's fair to equate rid of mandamus and the civil contempt situation. Absolutely. We agree because one is unilateral. The privilege holder can exercise it. There's no discretion, whereas mandamus is not. And then you look at the first thing they looked at. The Supreme Court says there's a lack of discernible chill on the exercise of the privilege because there's a remote prospect of erroneous disclosure once the district court has looked at the stuff and said it's not privileged. That's not what we have here. We have what this court has said is a conflicted group of people who have already said that they are defining the privilege not to include work product, number one, but number two, at JA60 and 61, the protocol that they use does not require them to tell the court or tell the privilege holder if privilege material has gone over to the prosecution team. So we may never know, and there may well be no ability to fix this. And so, you know, and then the government says this is an investigative function. I know this is getting to the merits, but this is really important. Their protocol at JA59 says, quote, that it says the privilege, excuse me, the filter team is performing a, quote, privilege screening function only, and then it goes on to say they're not involved in investigation. And so to make this argument on the merits, they have to ask you to ignore what they've said in the protocol. And then they say, well, there's going to be a chance to deal with this later, but the protocol itself deprives us of the right to know whether anything has happened. And so if we don't know that privilege material has gone over, we have no way to fix it. And so these all fit right back into the framework of at least the collateral order doctrine for appeal. This court has said it's an irreparable harm for privilege material to go over to the prosecution team. But not only that, we have a constitutional right to have judges make this decision, and that constitutional right will be forever lost. And that's irreparable harm right there. A prospective violation of the Constitution is per se irreparable harm. And so, you know, we have DEBELA, but DEBELA in all of those cases are about suppression. None of those cases are about privilege. Mohawk is about privilege. And it says, look at the actual real-world impact. And when we apply Mohawk, the balancing test of will it chill, the exercise of the right, of course it will. This is about privacy, and that right to privacy is violated at the discretion of law enforcement officers who this court says are conflicted and pose a serious risk. And so we don't have the right to appeal this later. That, we think, is the appropriate framework. We also think that in court, when the 11th Circuit addressed these issues, they got it right. And we very much appreciate your time in addressing this issue. Thank you. Thank you. Thank you very much, Mr. Abrams. We note that you are court-appointed, and we want to express our sincere appreciation to you for undertaking representation in this case because we could not do our function without folks like you. So with that, we'll come down and greet counsel and take a brief recess. This honorable court will take a brief recess.
judges: G. Steven Agee, Julius N. Richardson, A. Marvin Quattlebaum Jr.